**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWARD CORREA,<br><br>      Plaintiff,<br><br>v.<br><br>WORKING FAMILIES UNITED FOR N.J., et al.,<br><br>      Defendants. | Civil Action No. 16-2217 (ES) (JAD)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Defendants Working Families United for N.J., New Jersey State AFL-CIO, New Jersey State AFL-CIO Community Services Agency, and Charles Wowkanech (the "Moving Defendants") seek partial dismissal of Plaintiff Edward Correa's Complaint under Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 24). Defendants Town of Dover and Mayor James P. Dodd (together, the "Dover Defendants," and collectively with the Moving Defendants, "Defendants") joined the present motion. (*See* D.E. No. 25). The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367(a). Having considered the submissions made in support of and in opposition to Defendants' motion, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). As set forth below, the Court GRANTS Defendants' motion to dismiss Counts I and III.

**I.    BACKGROUND**[1]

***Plaintiff.*** Correa resides in the Town of Dover. (D.E. No. 1 ("Compl.") ¶ 5). As of February 11, 2014, he was the Executive Director of Working Families United for New Jersey

---

[1] The Court must accept Plaintiff's factual allegations as true for purposes of resolving the pending motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012).

1

("Working Families United"). (*Id.* ¶¶ 14, 21). He was also the State Director of the We-Are-One-New-Jersey project (the "One NJ Project"), a program of the New Jersey State AFL-CIO Community Services Agency. (*Id.* ¶ 5). On May 13, 2015, Correa was terminated from both positions. (*Id.* ¶¶ 5, 21).

***Defendants.*** Correa asserts claims against six defendants: Working Families United, the New Jersey State AFL-CIO, the New Jersey AFL-CIO Community Services Agency, Charles Wowkanech, Town of Dover, and Mayor Dodd. (*See* Compl. at 1).

Working Families United is a New Jersey private entity and Correa's former employer. (*Id.* ¶¶ 5-6). At all relevant times, Wowkanech was President of the New Jersey State AFL-CIO (the parent entity, funder, and Trustee of the Board of Working Families United). (*Id.* ¶¶ 7, 9). Wowkanech was also President of the New Jersey AFL-CIO Community Services Agency, the fiscal agent and funder of the One NJ Project. (*Id.* ¶¶ 8-9). Correa resides in Dover, where Mayor Dodd serves as mayor. (*Id.* ¶¶ 5, 10).

***Facts.*** On May 12, 2015, Correa spoke during the "public comments portion" of a Dover town hall meeting and criticized Mayor Dodd's relationship with Dover's immigrant community. (*Id.* ¶ 15). At the time, Correa was serving as the Executive Director of Working Families United and State Director of the One NJ Project. (*Id.* ¶ 5). Correa alleges, however, that he spoke as a Dover resident and taxpayer and "not in his official capacity" as either the Executive Director of Working Families United, State Director of the One NJ Project, or representative of any other organization. (*Id.* ¶ 15).

Minutes after Correa's speech, Wowkanech called Correa to inform him that Mayor Dodd had "made a complaint" about what Correa said. (*Id.* ¶ 16). Wowkanech explained that Mayor Dodd "was not happy" with Correa's "behavior" and that the Mayor "did not want to see him at

2

the . . . Board of Aldermen meetings or stepped [sic] into Town Hall." (*Id.* ¶ 17). Wowkanech then asked Correa to resign. (*Id.* ¶ 18).

The following day, on May 13, 2015, Wowkanech "stated that [Correa] had a choice of resigning, being terminated, or apologizing" to Mayor Dodd. (*Id.* ¶ 19). Correa responded in a letter to Wowkanech that "he would not resign or apologize" to the Mayor. (*Id.* ¶ 20). Wowkanech and the New Jersey State AFL-CIO then terminated Correa from his positions on the same day. (*Id.* ¶ 21).

***Causes of Action.*** On April 20, 2016, Correa filed a four-count Complaint alleging retaliatory discharge against the Moving Defendants ("Count I"); tortious interference with economic advantage against the Dover Defendants ("Count II"); breach of contract against the Moving Defendants (Count III); and violation of 42 U.S.C. § 1983 through suppression of his First Amendment rights against the Dover Defendants ("Count IV"). (*Id.* ¶¶ 22-40).

***Procedural History.*** Shortly after Correa initiated this action, the Moving Defendants filed a first motion to dismiss Counts I and III for failure to state a claim. (D.E. No. 5). After the parties briefed the Moving Defendants' motion, Magistrate Judge Dickson entered a Text Order (i) directing the parties to exchange written discovery "on the limited issue of whether Plaintiff had an employment agreement"; and (ii) administratively terminating the Moving Defendants' motion without prejudice to their right to re-file that motion after completion of the limited discovery. (D.E. No. 19).

Following the exchange of limited discovery, the Moving Defendants filed a second motion to dismiss Counts I and III for failure to state a claim. (D.E. No. 24-4 ("Def. Mov. Br.")). That motion is presently before the Court. Correa opposed the Moving Defendants' motion (D.E. No. 27 ("Pl. Opp. Br.")), and the Moving Defendants replied (D.E. No. 29 ("Def. Reply Br.")).

On the same day the Moving Defendants filed their motion, the Dover Defendants submitted a letter indicating they "hereby join[] in the motion filed by the [Moving Defendants]." (D.E. No. 25). The Dover Defendants' letter states:

> The plaintiff's allegations against [the Dover Defendants] are that Mayor Dodd improperly interfered in the employment relationship between the plaintiff and the co-defendant. Plaintiff further alleges that the actions of [the Dover Defendants] in that regard, violated his civil rights. While [the Dover Defendants] vehemently den[y] those allegations, it is axiomatic that if no employment relationship existed between plaintiff and co-defendant, then the claims asserted by plaintiff against [the Dover Defendants] must also fail.

(*Id.*). The Dover Defendants cite no law in their letter. Plaintiff filed a response to the Dover Defendants' letter directed primarily to the merits of the Dover Defendants' legal assertions. (*See* D.E. No. 28).

Although the Dover Defendants seek to join the Moving Defendants' 12(b)(6) motion to dismiss Counts I and III, they also appear to seek dismissal of Count II, which alleges tortious interference with economic advantage. Because the Dover Defendants have already answered the Complaint (D.E. No. 6), their request presumably falls under Federal Rule of Civil Procedure 12(c). But the Dover Defendants have not complied with this District's Local Rules governing motion practice. (*See, e.g.*, Local Civil Rules 7.1 & 7.2). Accordingly, if the Dover Defendants wish to seek dismissal of certain counts of Plaintiff's Complaint, they must do so in accordance with this District's Local Rules and the Federal Rules of Civil Procedure.

## II. LEGAL STANDARD

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678.[2] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

---

[2] Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When reviewing a motion to dismiss, '[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). But the court is not required to accept as true "legal conclusions." *Iqbal*, 556 U.S. at 678. And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case.").

## III. DISCUSSION

### A. Count I: Retaliatory Discharge

#### i. *The Parties' Arguments*

Defendants argue that Correa's retaliatory-discharge claim "appears to hinge on his assertion that his employer terminated his employment based upon the exercise of his free speech rights under the First Amendment of the United States Constitution and/or its state counterpart." (Def. Mov. Br. at 8). Defendants contend that such a claim requires government action and cannot

5

be asserted against private employers.  (*Id.*).  And because each of the Moving Defendants are private actors, Defendants seek dismissal of Count I with prejudice.  (*Id.* at 19).

Defendants also argue that Correa cannot rely on *Pierce v. Ortho Pharm. Corp.*, a New Jersey Supreme Court case that held an at-will employee may sustain a claim for wrongful termination if he or she shows that the discharge was "contrary to a clear mandate of public policy," 417 A.2d 505, 512 (N.J. 1980).  (*See* Def. Mov. Br. at 9-10).  Defendants spend much of their brief addressing the Third Circuit's decision in *Novosel v. Nationwide Ins. Co.*, which analyzed Pennsylvania law and found that, for purposes of a *Pierce* claim, "a cognizable expression of public policy may be derived . . . from either the First Amendment of the United States Constitution or Article I, Section 7 of the Pennsylvania Constitution," 721 F.2d 894, 899 (3d Cir. 1983).  (*See* Def. Mov. Br. at 10-14, 19).

Defendants submit that, since *Novosel*, "the Supreme Court of Pennsylvania has disapproved of *Novosel*'s interpretation of its constitution."  (*Id.* at 12-13) (citing *Paul v. Lankenau Hosp.*, 569 A.2d 346 (1990)).  Defendants also note that "the Third Circuit has explicitly retreated from *Novosel*'s interpretation of Pennsylvania's Constitution."  (*Id.* at 13) (citing *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611 (3d Cir. 1992)).  Finally, Defendants contend that "the prevailing view among the majority of courts addressing the issue is that state or federal constitutional free speech cannot, in the absence of state action, be the basis of a public policy exception in wrongful discharge claims."  (*Id.*) (citing *Tiernan v. Charleston Area Med. Ctr., Inc.*, 506 S.E.2d 578, 587-91 (W. Va. 1998); *Johnson v. Mayo Yarns, Inc.*, 484 S.E.2d 840 (N.C. Ct. App. 1997); *Drake v. Cheyenne Newspapers, Inc.*, 891 P.2d 80 (Wyo. 1995); *Albertson's, Inc. v. Ortiz*, 856 S.W.2d 836 (Tex. App. 1993); *Shovelin v. Central N.M. Elec. Coop. Inc.*, 850 P.2d 996 (N.M. 1993); *Prysak v. R.L. Polk Co.*, 483 N.W.2d 629 (Mich. Ct. App. 1992); *Booth v. McDonnell Douglas Truck*

6

*Serv., Inc.*, 585 A.2d 24 (Pa. Super. Ct. 1991); *Korb v. Raytheon Corp.*, 574 N.E.2d 370 (Mass. 1991); *Barr v. Kelso-Burnett Co.*, 478 N.E.2d 1354 (Ill. 1985); *Gil v. Metal Serv. Corp.*, 412 So. 2d 706 (La. Ct. App. 1982), *writ denied*, 414 So. 2d 379 (La. 1982); *Chin v. AT&T*, 410 N.Y.S.2d 737 (N.Y. Sup. Ct. 1978).

In opposition, Correa argues that he has a valid *Pierce* claim because he was terminated in violation of a clear mandate of public policy. (Pl. Br. at 5).[3] In particular, Correa contends that "[t]his matter is not just about Freedom of Speech but the violation of public policy to be free from a harassing environment." (*Id.*). Plaintiff primarily relies on *Novosel* and analyzes that case's four-part inquiry for determining "the sufficiency of the claim in regard to protected speech." (*Id.* at 6).

### ii. Analysis

Under *Pierce*, an "employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." 417 A.2d at 512. "Sources of public policy include the United States and New Jersey Constitutions; federal and state laws and administrative rules, regulations, and decisions; the common law and specific judicial decisions; and in certain cases, professional codes of ethics." *MacDougall v. Weichert*, 677 A.2d 162, 167 (N.J. 1996). "A basic requirement of the wrongful discharge cause of action is that the mandate of public policy be clearly identified and firmly grounded." *Id.* On the other hand, a "vague, controversial, unsettled, and otherwise problematic public policy does not constitute a clear mandate," and "[i]ts alleged violation will not sustain a wrongful discharge cause of action." *Id.*

---

[3] Plaintiff's opposition brief does not include page numbers, so the Court will use the ECF-generated page numbers in that document's header to refer to pages therein.

7

To state a valid *Pierce* claim, a plaintiff "must identify the clear mandate of public policy allegedly violated by the employee's discharge." *Roman v. AXA Advisors, LLC*, No. 16-2863, 2017 WL 2381280, at *2 (D.N.J. June 1, 2017). "If an employee does not point to a clear expression of public policy the court can grant a motion to dismiss or for summary judgment." *Pierce*, 417 A.2d at 513.

In Count I, Correa alleges that he "engaged in a protected activity of speech, he was discharged after the speech was made, and there was a causal link between the protected activity and the loss of his job." (Compl. ¶ 23). Correa appears to base his claim on the United States Constitution and the New Jersey Constitution. (*See id.* at 2) (generally alleging violations of "First Amendment Rights" and the "New Jersey Constitution"). Although Correa does not explicitly link his *Pierce* claim to a specific source of public policy, Defendants' motion proceeds under the assumption that Correa's *Pierce* claim is "based upon the exercise of his free speech rights under the First Amendment of the United States Constitution and/or its state counterpart." (Def. Mov. Br. at 8). Correa's opposition appears to confirm this inference. (*See* Pl. Opp. Br. at 5). Thus, the Court will analyze Correa's *Pierce* claim as it relates to the First Amendment of the United States Constitution and Article 1, ¶ 6 of the New Jersey Constitution.[4]

The parties do not cite any New Jersey case that addresses whether a private employee may base a *Pierce* claim on a private actor's alleged interference with the employee's freedom of speech. This Court's independent research suggests no such case exists. *See, e.g.*, *Pietrylo v.*

---

[4] Correa also argues in his opposition brief that his termination violated a "policy to be free from a harassing environment." (Pl. Opp. Br. at 5). Correa's Complaint, however, does not allege any such violation. "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pa. ex. rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Consequently, the Court will dismiss *without prejudice* Correa's *Pierce* claim to the extent it is based on Defendants' alleged violation of a policy to be free from a harassing environment. *See Pierce*, 417 A.2d at 513 ("If an employee does not point to a clear expression of public policy, the court can grant a motion to dismiss or for summary judgment."). Correa may amend his Complaint to assert such a claim if appropriate.

*Hillstone Restaurant Grp.*, No. 06-5754, at *5 (D.N.J. July 25, 2008) ("New Jersey state courts have not addressed whether or not a private employee may base a wrongful termination claim based on alleged interference with freedom of speech as protected by the New Jersey Constitution."); *Wiegand v. Motiva Enters., LLC*, 295 F. Supp. 2d 465, 473-74 (D.N.J. 2003) ("The issue regarding whether a wrongful termination claim against a private actor can be based on a First Amendment constitutional claim, when First Amendment claims must themselves be based on state action, is one that New Jersey courts have not addressed.").

The precise question before the Court is whether the First Amendment of the United States Constitution or Article I, ¶ 6 of the New Jersey Constitution "reflect a clear mandate of public policy that prohibits" Correa's termination. *See MacDougall*, 677 A.2d at 168. Defendants' primary argument is that Correa cannot rely on constitutional free-speech protections where there is no government involvement. As a general matter, Defendants are correct. "Under the United States Constitution, the First Amendment protections for freedom of speech are directed only to state action, not to private action." *Pietrylo*, 2008 WL 6085437, at *5 (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-60 (1999)). And with certain limited exceptions not applicable here,[5] "the protections of Article I ¶ 6 of the New Jersey Constitution mirror those of the First Amendment, and the New Jersey Supreme Court relies on federal constitutional principles in interpreting its own constitution's free speech provisions." *Sunkett v. Misci*, 183 F. Supp. 2d 691, 708 (D.N.J. 2002). Thus, the Court concludes that Correa's termination cannot violate the First Amendment of the United States Constitution or Article I, ¶ 6 of the New Jersey Constitution because neither provision protects against private action in this context.

---

[5] "Two exceptions to the general rule . . . are political expressions at privately-owned-and-operated shopping malls, *New Jersey Coalition v. J.M.B.*, 138 N.J. 326, 650 A.2d 757 (1994), and defamation, *Sisler v. Gannett Co.*, 104 N.J. 256, 271, 516 A.2d 1083 (1986)." *Hamilton Amusement Center v. Verniero*, 716 A.2d 1137, 1142 (N.J. 1998).

Although this issue appears to be one of first impression in New Jersey, other district courts have precluded a private employee's *Pierce* claim based on a private employer's alleged infringement of free speech. *See, e.g.*, *George v. Lab. Corp. of Am. Holdings*, 522 F. Supp. 2d 761, 763-64 (N.D.W. Va. 2007) ("George's argument to extend First Amendment protections to employees in the private sector is unpersuasive; this Court, therefore, declines to extend the law in such direction at this time."); *Petrovski v. Fed. Express. Corp.*, 210 F. Supp. 2d 943, 948 (N.D. Ohio 2002) (observing that the "prevailing view among the majority of courts addressing the issue is that state or federal constitutional free speech cannot, in the absence of state action, be the basis of a public policy exception in wrongful discharge claims") (collecting cases and secondary sources). Thus, this Court's conclusion that Correa cannot state a *Pierce* claim based on private employers' alleged infringement of his constitutional free-speech rights appears to align with the district courts that have addressed this issue.

Plaintiff's reliance on *Novosel v. Nationwide Ins. Co.* is misplaced for the following reasons. *First*, that decision analyzed the propriety of the plaintiff's *Pierce* claim under Pennsylvania law, *see Novosel*, 721 F.2d 894, 895 (3d Cir. 1983), whereas Correa's *Pierce* claim is based on New Jersey law. *Second*, as Defendants correctly argue (*see, e.g.*, Def. Mov. Br. at 12-14), the Third Circuit has declined to extend *Novosel* and has even cast doubt on the propriety of the holding based on later developments in Pennsylvania law. *See Borse*, 963 F.2d at 620 ("In light of the narrowness of the public policy exception and of the Pennsylvania courts' continuing insistence upon the state action requirement, we predict that if faced with the issue, the Pennsylvania Supreme Court would not look to the First and Fourth Amendments as sources of public policy when there is no state action."). Indeed, since *Novosel,* "Pennsylvania courts have not followed *Novosel* and have not permitted a wrongful discharge cause of action under a

constitutional provision absent a showing of state action." *Wiegand*, 295 F. Supp. 2d at 474 n.11 (citing *Veno v. Meredith*, 357 Pa. Super. 85, 515 A.2d 571 (1986); *Martin v. Capital Cities Media, Inc.*, 354 Pa. Super. 199, 511 A.2d 830, 843-44 (1986)). *Third*, *Novosel* is a case about forced political speech, whereas here, Correa alleges retaliatory discharge based on his voluntarily public criticism of Mayor Dodd, (*see, e.g.*, Compl. ¶¶ 15-21). *See Brennan v. Cephalon, Inc.*, No. 04-3241, 2005 WL 2807195, at *17 (D.N.J. Oct. 25, 2005) ("Here, Plaintiff does not allege that he was fired based on forced political speech. Therefore, *Novosel* cannot be the basis for his claim for wrongful discharge based on exercising his rights to free speech . . . ."). Thus, this Court concludes that "the *Novosel* decision does not control here, and, if anything, the later decision in *Borse* supports [D]efendants' reading of the public policy exception." *Wiegand*, 295 F. Supp. 2d at 474 n.11.

For the foregoing reasons, the Court will grant *with prejudice* Defendants' motion to dismiss Count I of Correa's Complaint to the extent it is based on constitutional free-speech protections.

### B. Count III: Breach of Contract

In Count III, Correa alleges that the Moving Defendants breached "a binding employment agreement" with him by terminating him "without proper cause." (Compl. ¶¶ 31-34). Correa's Complaint does not identify any employment agreement specifically, but rather generally alleges that a "binding employment contract existed" between Correa and the Moving Defendants. (*Id.* ¶ 27).

Correa's opposition, however, attaches an Employment Manual purportedly issued by Defendant New Jersey State AFL-CIO. (*See* D.E. No. 27-3). The Employment Manual presumably surfaced during the parties' limited discovery ordered by Magistrate Judge Dickson.

Correa argues in his opposition brief that the Employment Manual constituted an implied contract with Working Families United. (*See* Pl. Opp. Br. at 8-9). Correa's opposition brief makes no other arguments about any employment agreements with Defendants. (*See generally id.* at 8-10). In effect, Correa's opposition brief is tantamount to a constructive amendment of his Complaint, and it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," *Pa. ex. rel. Zimmerman*, 836 F.2d at 181.

Because Correa's Complaint is silent with respect to the Employment Manual and does not otherwise allege sufficient facts to state a claim for breach of contract, the Court will grant Defendants' motion to dismiss Count III. But the Court will permit Correa to amend his Complaint to include, among other things, allegations about the Employment Manual. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) ("[I]f a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile."); *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("[T]he grant or denial of an opportunity to amend is within the discretion of the District Court."). The Court finds that amendment here is in the interests of justice, efficiency, and judicial economy, especially since the Court will permit Correa to amend Count I to the extent he can state a valid *Pierce* claim based on a "policy to be free from a harassing environment," (Pl. Opp. Br. at 5).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss Counts I and III. Count I is dismissed *with prejudice* to the extent it is based on constitutional free-speech protections. Count I is dismissed *without prejudice* to the extent it is based on a policy to be free from a harassing environment. Count III is dismissed *without prejudice*.

An appropriate Order accompanies this Opinion. Correa may amend his Complaint within thirty days of the Order.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**