UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

EDWARD CORREA,

    Plaintiff,

v.

WORKING FAMILIES UNITED
FOR N.J., et al.,

    Defendants.

Civil Action No. 16-2217 (ES) (JAD)

OPINION

**SALAS, DISTRICT JUDGE**

Before the Court is Defendants Working Families United for New Jersey ("Working Families"), New Jersey State AFL-CIO ("NJ AFL-CIO"), New Jersey State AFL-CIO Community Services Agency ("NJ AFL-CIO Community Services Agency"), and Charles Wowkanech's (collectively, the "Moving Defendants") motion to dismiss Counts I and III of Plaintiff Edward Correa's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 41). The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367(a). Having considered the submissions made in support of and in opposition to the Moving Defendants' motion, the Court decides the matter without oral argument. *See* Fed. R. Civ. P. 78(b). As set forth below, the Court GRANTS the Moving Defendants' motion to dismiss. Counts I and III are dismissed *with prejudice*.

1

## I. Background[1]

### A. The Parties

Correa is a Hispanic resident of Dover, New Jersey. (D.E. No. 37 ("Am. Compl.") ¶ 4). On February 11, 2014, he became the Executive Director of Working Families. (*Id.* ¶ 13). He was also the State Director of the We Are One New Jersey project (the "One NJ Project"), a program of the NJ AFL-CIO Community Services Agency. (*Id.* ¶ 4).

Correa asserts claims against six defendants: Working Families, the NJ AFL-CIO, the NJ AFL-CIO Community Services Agency, Charles Wowkanech, the Town of Dover, and Dover's Mayor, James P. Dodd. (*See id.* at 1).[2] Working Families is a New Jersey private entity and Correa's former employer. (*Id.* ¶ 5). At all relevant times, Wowkanech was President of the NJ AFL-CIO (the parent entity, funder, and Trustee of the Board of Working Families). (*Id.* ¶ 8). Wowkanech was also President of the Board of Trustees of the NJ AFL-CIO Community Services Agency, the fiscal agent and funder of the One NJ Project. (*Id.* ¶¶ 7-8).

### B. Factual Background

On May 12, 2015, Correa spoke during the "public comments portion" of a Dover town hall meeting and criticized Mayor Dodd's relationship with Dover's Hispanic immigrant community. (*Id.* ¶ 14). Correa was then serving as the Executive Director of Working Families and State Director of the One NJ Project. (*Id.* ¶ 4). Correa alleges, however, that he spoke as a Dover resident and taxpayer and "not in his official capacity" as either the Executive Director of Working Families, State Director of the One NJ Project, or representative of any other organization. (*Id.* ¶ 14).

---

[1] The Court must accept Plaintiff's factual allegations as true for purposes of resolving the pending motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012).

[2] Plaintiff also names John Doe 1-5 and ABC Corp. 1-5 as defendants.

Minutes after Correa's speech, Wowkanech called Correa to inform him that Mayor Dodd had "made a complaint" about what Correa said. (*Id.* ¶ 15). Wowkanech explained that Mayor Dodd "was not happy" with Correa's "behavior" and that the Mayor "did not want to see him at the . . . Board of Aldermen meetings or stepped [sic] into Town Hall." (*Id.* ¶ 16). Wowkanech then asked Correa to resign. (*Id.* ¶ 17).

The next day, Wowkanech "stated that [Correa] had a choice of resigning, being terminated, or apologizing" to Mayor Dodd. (*Id.* ¶ 18). Correa responded in a letter to Wowkanech that "he would not resign or apologize" to the Mayor. (*Id.* ¶ 19). Wowkanech and the NJ AFL-CIO then terminated Correa from his positions as the Executive Director of Working Families and State Director of the One NJ Project. (*Id.* ¶ 20).

**C. Procedural History**

Correa filed an initial Complaint on April 20, 2016. (D.E. No. 1). Following dispositive motion practice, the Court (i) dismissed *with prejudice* Count I (Retaliatory Discharge) to the extent the claim was based on constitutional free-speech protections; and (ii) dismissed *without prejudice* Count III (Breach of Contract) because Correa did not reference or attach the employment manual on which his claim was based. (*See* D.E. Nos. 32 & 33).

On January 8, 2018, Correa filed an Amended Complaint alleging retaliatory discharge because he "was discharged from his position based on his affiliation with the Hispanic immigrant community which was revealed in his speech, and he was terminated due to that affiliation and his race which was Hispanic." (Am. Compl. ¶ 22). Correa renewed Counts II, III, and IV. (*See id.* ¶¶ 21-42).

Defendants Working Families, NJ AFL-CIO, NJ AFL-CIO Community Services Agency, and Wowkanech moved to dismiss Correa's Amended Complaint on February 8, 2018. (D.E. No.

3

41-4 ("Defs. Mov. Br.")). Correa opposed the Moving Defendants' motion on March 6, 2018. (D.E. No. 43 ("Pl. Opp. Br.")). The Moving Defendants replied in further support of their motion on March 14, 2018. (D.E. No. 46 ("Defs. Reply")). The motion is now ripe for adjudication.

## II. Legal Standard

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.[3] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When reviewing a motion to dismiss, [a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). But the court is not required to accept as true "legal conclusions." *Iqbal*, 556 U.S. at 678. And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim,

---

[3] Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case.").

## III. Discussion

### A. Count I: Retaliatory Discharge Under the NJLAD

#### 1. Law

Under the New Jersey Law Against Discrimination (the "NJLAD"), an employer may not retaliate against an employee because that employee "has opposed any practices or acts forbidden under [the NJLAD] or because that person has . . . filed a complaint, testified or assisted in any proceeding under [the NJLAD] . . . ." N.J.S.A. § 10:5-12(d); *see Cortes v. Univ. of Med. & Dentistry of N.J.*, 391 F. Supp. 2d 298, 314 (D.N.J. 2005). To state a claim for retaliatory discharge under the NJLAD, a plaintiff must show: (i) that he "engaged in a protected activity," (ii) that he "suffered an adverse employment action," and (iii) that "there was a causal connection between the protected activity and the adverse employment action." *Nuness v. Simon and Schuster, Inc.*, 221 F. Supp. 3d 596, 605 (D.N.J. 2016) (citing *Sanchez v. SunGard Availability Servs. LP*, 362 Fed. App'x. 283, 287 (3d Cir. 2010)). In addition, "the plaintiff bears the burden of proving that his or her original complaint—the one that allegedly triggered his or her employer's retaliation— was made reasonably and in good faith." *Carmona v. Resorts Int'l Hotel, Inc.*, 915 A.2d 518, 521 (2007).

#### 2. The Parties' Arguments

Correa's retaliatory-discharge claim under the NJLAD[4] stems from his termination after speaking out "about immigration issues in the Town of Dover." (Am. Compl. ¶¶ 21–24). Correa

---

[4] Count I of Correa's Amended Complaint does not explicitly reference the NJLAD. But the introduction of the Amended Complaint references the NJLAD as a theory of liability, and Count I recites the elements of a retaliatory discharge claim under the NJLAD. (*See* Am. Compl. at 1-6).

5

argues that the following three allegations satisfy the pleading standard for a retaliatory-discharge claim under the NJLAD. (*Id.*). *First*, Correa alleges that his speech at the Dover Town Hall meeting, which he claims revealed "his affiliation with the Hispanic immigrant community" and his membership to "a protected minority class," was protected activity for purposes of the statute. (*Id.* ¶ 22). *Second*, Correa alleges that he suffered an adverse employment action because he "was discharged from his position." (*Id.*). *Third*, Correa alleges that there was "a causal link between his race and the loss of his job" when "he was terminated due to that affiliation [with the Hispanic immigrant community] and his race which was Hispanic." (*Id.*).

In their moving brief, the Moving Defendants argue that Correa failed to plead a prima facie *discrimination* claim under the NJLAD. (Defs. Mov. Brief at 18–19). Although Count I is labeled as a retaliatory-discharge claim and references the elements of a retaliatory-discharge claim, it also contains allegations directed to some of the elements of a discrimination claim under the NJLAD. (*See* Am. Compl. ¶ 22). For example, Correa alleges that he is a member of a "protected minority class."[5] (*Id.*). Correa's Amended Complaint does not, however, sufficiently identify discrimination under the NJLAD as a cause of action, and as a result this Court will not address it.[6]

On reply, the Moving Defendants acknowledge that the Amended Complaint contains allegations directed to a retaliation claim under the NJLAD. (Defs. Reply at 6–9). The Moving Defendants argue that because the content of Correa's speech did not "concern workplace

---

[5] In the context of the NJLAD, this element is unique to claims for discrimination, which require a showing that the plaintiff was a member of a protected class. *Tourtellote v. Eli Lilly and Co.*, 636 Fed. App'x. 831, 842 (3d Cir. 2016). A claim for retaliatory discharge does not require a plaintiff to show that he was a member of a protected class. *See Nuness*, 221 F. Supp. 3d at 605.

[6] Even if Correa's Amended Complaint does sufficiently allege a claim for discrimination under the NJLAD, the claim is deficient because Correa never alleges that he "was qualified for the position in question" or that the "adverse employment action gives rise to an inference of unlawful discrimination." *Tourtellote*, 636 Fed. App'x. at 842.

6

discrimination" and instead concerned "Mayor Dodd's relationship with the Hispanic community," Correa's Town Hall speech was not a protected activity. (*Id.* at 9). They contend that Correa never "reference[ed] his employment with any of the Defendants or a belief that he was being discriminated against by any of the Defendants" during his Town Hall speech. (*Id.*).

Neither party disputes that Correa has satisfied the second and third elements of a retaliatory-discharge claim: that he "suffered an adverse employment action" or "that there was a causal connection between the [alleged] protected activity and the adverse employment action." *See Nuness*, 221 F. Supp. 3d at 605 (citing *Sanchez*, 362 Fed. App'x. at 287). So, the Court will focus its analysis on the central remaining issue: whether Correa's speech at the Town Hall meeting constituted protected activity under the NJLAD.

### 3. Analysis

The Court is not persuaded that Correa's speech at the Dover Town Hall meeting constituted protected activity under the NJLAD. Courts in this District have made clear that the "NJLAD prohibits employment discrimination and retaliation against an employee for opposing a discriminatory practice which is based upon race, color, sex, religion, national origin, or a number of other listed factors." *Chambers v. Heidelberg USA, Inc.*, No. 04-0583, 2006 WL 1281308, at *10 (D.N.J. May 5, 2006); *see* N.J.S.A. § 10:5-12(d). "Therefore, in order to have engaged in a protected activity under . . . the NJLAD, [a plaintiff] . . . must show that his complaints about the [defendant's] . . . conduct amounted to allegations of discrimination on the basis of race, color, sex, religion, national origin, or some other statutorily enumerated basis." *Chambers*, 2006 WL 1281308, at *10; *see Ogunbayo v. Hertz Corp.*, 542 F. App'x. 105, 107 (3d Cir. 2013) ("[O]nly challenges to discrimination prohibited by the NJLAD—such as discrimination on the basis of race, age, or gender—constitute 'protected activity.'") (citation omitted).

7

In contrast, speech that is unrelated to an individual's employment "is not in itself a protected activity" under the NJLAD's antiretaliation provision. *See Maddox v. City of Newark*, 50 F. Supp. 3d 606, 623 (D.N.J. 2014). Confusingly, Correa alleges that his speech during the Town Hall meeting was protected because "he was in a protected minority class which was Hispanic" and his speech revealed "his affiliation with the Hispanic immigrant community." (Am. Compl. ¶ 22). But this allegation does not concern an unlawful employment practice by his employer, which the NJLAD requires.

Although the NJLAD prohibits "any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act," Correa has never alleged that his employer took reprisals against him for attempting to enforce any provision of the NJLAD. *See* N.J.S.A. § 10:5-12(d). In fact, Correa's termination predates the filing of his suit. (*See generally* Am. Compl.). For example, if an employee was terminated after voicing concerns about discrimination in the workplace, the employee could have a basis to seek relief under the NJLAD's retaliatory-discharge provision. *See, e.g.*, *Chambers*, 2005 WL 1281308, at *10; *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997).

Rather, Correa merely alleges that his speech, which was critical of the Mayor, was protected activity because "he spoke out about immigration issues in . . . Dover based on his experiences as an Hispanic man." (Am. Compl. ¶ 23). The content of Correa's speech at the Town Hall meeting is not a type of protected activity that the NJLAD recognizes. *Heidelberg USA, Inc.*, at 10 (D.N.J. May 5, 2006). Correa was not speaking to his employer, was not speaking about the work conditions of his employment, and was not airing any grievances he may have had regarding his employment. (Am. Compl. ¶ 22). Thus, the content of Correa's speech at the Town Hall meeting, which expressed his personal views about the Mayor's shortcomings with the Hispanic

community in Dover, is not a type of protected activity the NJLAD recognizes. *Maddox*, 50 F. Supp. 3d at 623 (D.N.J. 2014). Correa's prima facie retaliatory discharge claim fails as a result of insufficiently pleading that his speech was a type of protected activity under the NJLAD.

For the foregoing reasons, the Court will grant Defendants' motion to dismiss Count I of Correa's Amended Complaint. Because this is Correa's second bite at the apple and amendment would be futile, Count I is dismissed *with prejudice*.

### B. Count III: Breach of Contract

#### 1. Law

Under New Jersey law, "an employment manual providing terms and conditions of employment that includes grounds and procedures for dismissal can create an employment contract." *Doll v. Port Authority Trans-Hudson Corp.*, 92 F. Supp. 2d 416, 422 (D.N.J. 2000). "To determine whether a contract can be implied from statements published in an employee handbook, [courts] consider the reasonable expectations of the employees." *Delgado v. Raritan Bay Medical Ctr.*, 624 Fed. App'x. 812, 813 (3d Cir. 2015) (citing *Witkowski v. Thomas J. Lipton, Inc.,* 643 A.2d 546, 550 (1994); *Woolley v. Hoffmann–La Roche,* 491 A.2d 1257, 1264 (1985)). "To do this, [courts] must examine the definiteness and comprehensiveness of the policies as well as the context of the manual's preparation and distribution." *Id.* (citing *Witkowski,* 643 A.2d at 550). "A company, however, may prevent an employment guide from creating an implied contract by including a clear and prominent disclaimer." *Id.* (citing *Woolley,* 491 A.2d at 1258; *Nicosia v. Wakefern Food Corp.,* 136 N.J. 401, 643 (1994)).

#### 2. The Parties' Arguments

In Count III, Correa alleges that the Moving Defendants breached "a binding employment agreement" with him by terminating him "without proper cause." (Am. Compl. ¶ 35). Correa

9

alleges that there is a discrimination policy in the Employee Handbook provided to him "at the beginning of his employment." (*Id.* ¶ 31). Thus, Correa alleges that he was terminated without proper cause when he was terminated due to his race and affiliation with the Hispanic community. (*Id.* ¶¶ 33-35).

The Moving Defendants contend that the employer, Working Families, "did not have an Employee Handbook." (Defs. Mov. Br. at 21). Correa has not produced the Employee Handbook that his Amended Complaint references. The Moving Defendants have provided the "only handbook [Correa] may be referring to," which is the NJ AFL-CIO's Employee Policy Manual (the "Manual").[7] (*Id.* at 24; D.E. No. 41-2, Certification of Charles Wowkanech ("Wowkanech Cert."), Ex. A). The Moving Defendants argue that the "Manual did not apply to [Correa] because he did not work for that entity." (Defs. Mov. Br. at 4).

The Moving Defendants also contend that, even if the Manual did apply to Correa, "the Manual contained sufficient disclaimer language to not deem it an employee contract." (*Id.*). According to the Moving Defendants, the Manual's first substantive page contains a "prominent disclaimer bolded, highlighted and in capital letters advising the reader that the Manual does not create an employment contract or modify the right of the employer to terminate the employee at any time." (*Id.* at 24). In opposition, Correa alleges that the disclaimer "did not notify [him] that he was an at will employee." (Pl. Opp. Br. at 9).

3. **Analysis**

The Court concludes that Correa has failed to state a breach-of-contract claim because he appears to have been an at-will employee, and the only Employee Manual identified by either party

---

[7] "In evaluating a motion to dismiss, [courts] may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case." *Buck*, 452 F.3d at 260.

did not contain an implied contract of employment. Indeed, on the first substantive page of the Manual, the disclaimer states in bold, capitalized font:

> THE INFORMATION CONTAINED IN THIS MANUAL GENERALLY DESCRIBES THE PERSONNEL POLICIES AND PROCEDURES THAT GOVERN THE EMPLOYMENT RELATIONSHIP BETWEEN THE NJ AFL-CIO AND ITS EMPLOYEES. **IT IS NOT A CONTRACT** . . . . THIS IS CERTIFY [SIC] I HAVE BEEN INFORMED AND UNDERSTAND THAT THE NJ AFL-CIO EMPLOYER INFORMATION MANUAL IS NOT A BINDING CONTRACT, EITHER EXPRESS OR IMPLIED, GUARANTEEING EMPLOYMENT FOR ANY SPECIFIC DURATION. BUT IT IS A SET OF GUIDELINES . . . . **I ALSO UNDERSTAND, NOTWITHSTANDING ANY OF THE PROVISONS OF THIS MANUAL, I AM EMPLOYED ON AN AT-WILL BASIS**. MY EMPLOYMENT MAY BE TERMINATED AT ANY TIME, EITHER BY ME OR BY THE NJ AFL-CIO, WITH OR WITHOUT CAUSE. I RECOGNIZE CHANGES IN THESE POLICIES WILL IN NO WAY ALTER THE "AT-WILL" NATURE OF MY EMPLOYMENT.

(Wowkanech Cert., Ex. A) (emphasis added).

Correa unsuccessfully attempts to convert his at-will employment into something more, despite his own allegations and the record showing otherwise. (*See* Pl. Opp. Br. at 9). The NJ AFL-CIO provided a "clear and prominent disclaimer" in the Manual to avoid the precise implied contract claim that Correa alleges. *See Delgado*, 624 Fed. App'x. at 813 (citing *Woolley,* 491 A.2d at 1258; *Nicosia*, at 643). Further, Correa has failed to produce any Employee Handbook or Manual which he alleges created an implied contract between him and the Moving Defendants. Thus, because the Manual provided by the Moving Defendants contains a sufficient disclaimer, and because Correa has not challenged the Manual as the one he received, Correa's breach-of-contract claim fails. *See Delgado*, 624 Fed. App'x. at 813. As a result, the Court need not address whether Correa was an employee of the NJ AFL-CIO when he was terminated.

Because this is Correa's second bite at the apple and further amendment would be futile, Count III is dismissed *with prejudice*. *See Kissell v. Dep't of Corrections*, 634 F. App'x. 876, 879 (3d Cir. 2015).

**IV. Conclusion**

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss Counts I and III *with prejudice*.[8]  An appropriate Order accompanies this Opinion.


                                          *s/Esther Salas*
                                          **Esther Salas, U.S.D.J.**

---

[8] In light of this ruling, the Court need not address the parties' alternative arguments.